FILED

2012 Oct-26  PM 01:34
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES EARL THOMAS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| **vs.** | ) | Civil Action Number |
| | ) | **2:12-cv-227-AKK** |
| **H ALLRED, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Plaintiff James Earl Thomas, who was a party to a 1992 paternity suit that resulted in a child support default judgment against him, *see generally* doc. 49, failed to utilize Alabama's appeal procedures to challenge the decisions.  Instead, following hearings in 2008, 2009, and 2010 in Jefferson County Family Court and a resulting imprisonment, Thomas seeks to challenge the state court decisions by filing this lawsuit under 42 U.S.C. § 1983 in which he alleges a conspiracy between the state court judges and others to defraud him of money and to deprive him of his Fourth, Eighth, and Fourteenth Amendment rights and state law rights prohibiting false imprisonment, false arrest, and malicious prosecution. *Id.*  Defendants move to dismiss Thomas's Second Amended Complaint, and, perhaps because he recognizes the merits of Defendants' arguments, Thomas seeks leave to file a third

amended complaint. *See* docs. 58, 59, 62, 84. The motions are fully briefed and

ripe for review. *See* docs. 60, 61, 63, 67, 71-73, 76. For the reasons stated fully

below, the motions to dismiss are due to be **GRANTED**, and the motion to amend is

due to be **DENIED**.[1]

## I.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a

short and plain statement of the claim showing that the pleader is entitled to relief."

"[T]he pleading standard Rule 8 announces does not require 'detailed factual

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions"

or "a formulaic recitation of the elements of a cause of action" are insufficient. *Id*.

(citations and internal quotation marks omitted). "Nor does a complaint suffice if it

tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*.

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint

fails to state a claim upon which relief can be granted. "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state

---

[1]Moreover, in light of this decision, Plaintiff's motions to allow the case to go forward, docs. 90 and 92, are **MOOT**.

a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).  A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.  The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").  On a motion to dismiss under Rule 12(b)(6), the court accepts all factual allegations as true. *See, e.g.*, *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000)*.*  However, legal conclusions unsupported by factual allegations are not entitled to that assumption of truth. *Iqbal*, 556 U.S. at 678.  Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Because Thomas proceeds *pro se* – that is, without an attorney –  the court must construe his pleadings liberally. *See Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008) (citation omitted).  However, "this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *GJR Invs. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1369 (11th Cir. 1998).  Indeed, "[o]nce a *pro se* litigant is in court, he is

subject to the relevant laws and rules of court, including the Federal Rules of Civil Procedure." *Smith v. Fla. Dep't of Corr.*, 369 F. App'x 36, 38 (11th Cir. 2010) (citing *Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989)).  Therefore, while the court construes Thomas's pleadings liberally and affords them significant leniency, the court may not wholly disregard the federal pleading standards.  *See Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990); *see also Smith*, 369 F. App'x at 38.

## II.    FACTUAL ALLEGATIONS

Thomas alleges that the relevant events began on April 9, 1992, when Defendant Agnes Chappell[2] "of the Family Court of Jefferson County, Alabama issued a default judgment against [Thomas] establishing paternity and setting [the] amount of Child Support" pursuant to an order from a Georgia court.  Doc. 49 at 4; *see also* doc. 1-1 at 4.  In the Georgia order, Denise Smith, Thomas's one-time "common law" wife, established paternity against Thomas and obtained a judgment for child support.  *Id*.  When Thomas failed to comply, the state of Georgia sought relief here in Jefferson County and obtained a default judgment.  *Id*.  The default

---

[2]Thomas contends that Judge Chappell served as a Jefferson County Family Court Judge in 1992.  *See* doc. 49 at 4.  However, Judge Chappell maintains that in 1992 she "was performing judicial functions as a referee pursuant to former Code § 12-15-106 of the Code of Alabama, 1975."  Doc. 59 at 1 n.1.  The difference is insignificant for the court's purposes here.

judgment ordered Thomas to pay $151.00 per month to Smith and to reimburse the state of Georgia $3,721.17 by paying an additional $50.00 per month.  Doc. 49 at 5.

Shortly thereafter, on April 17, 1992, the District Attorney's Office of Child Support Recovery in Columbus, Georgia initiated a civil case against Thomas on Smith's behalf.[3]  *Id.*  Thomas purportedly paid $200 each month thereafter until August 1995, when, for reasons unknown to this court, "Thomas was sent back to prison."  *Id.*  Furthermore, Thomas contends that at "[s]ome time in 1997, DHR of Columbus, Georgia stopped giving Denise Smith money for Child Support and closed the Child Support."  *Id.*

Thomas maintains that eight years later, on or about June 30, 2005, Judge Henry Allred "issued a Court Order to Colonial Bank to give [Thomas's] money in his account to Child Support in Georgia."  Doc. 49 at 5; *see also* doc. 43-1 at 4 (copy of Colonial Bank check for $2,928.27 from Thomas's account to the Office of Child Support Enforcement in Jonesboro, Georgia on June 7, 2005).  Also, allegedly, sometime prior to January 30, 2008, Judge Elise Barclay, and an unknown prosecutor, "acting on a mistaken belief that [Thomas] was completely ignorant of the law and because he is an African American, . . . conspired, planned

---

[3] Thomas claims the District Attorney filed the action in Montgomery, Alabama. However, the evidence Thomas provided is a "Civil Case Initiation Form" filed by Denise Smith in the Superior Court of Muscogee County, Georgia seeking to enforce child support payments. *See* doc. 1-1, at 6; doc. 49, at 5.

and agreed to bring up a closed Child Support case against [Thomas] and used the Family Court system to falsify documents that would make it appear that [Thomas] owed Child Support." *Id.* at 6.  Moreover, "[p]ursuant to the conspiracy . . . Judge Elise Barclay set up several fake hearings, but each time that she would see [Thomas's] witness she would cancel the hearing." *Id.*  Allegedly, Defendant Jack A. Wallace joined the conspiracy "when he conspired with a lady at DHR to fabricate the record to make it appear that plaintiff owed money for Child Support." *Id.* at 7.  "The purpose of the conspiracy was that defendants used the State Court System to get [Thomas] to pay money he did not owe, voluntarily or by force." *Id.* at 8.

In October 2008, Thomas and Denise Smith allegedly "settled the remainder of the Child Support between them." *Id.* at 6; *see* doc. 43-1 at 2.  The October 3, 2008 agreement Thomas provided stated

> This agreement is entered into by and between James Earl Thomas and Denise Smith concerning child support for their child, Armon Quinta Parker.  I, James Earl Thomas acknowledge that I have a responsibility to pay to Denise Smith the sum of $150.00 per month.  I also acknowledge that in the past I have not been able to make all payments on schedule.
>
> Therefore, I have discussed my financial situation with Denise Smith and we both agree that all unpaid amounts that [are] still due her will be paid on a schedule that we both have agreed to.  The amount still owing is to be treated as a personal loan and will be paid on a schedule that we both agree to. . .

Doc. 43-1 at 2.  The record is unclear whether Thomas provided this agreement to the state court.

Pursuant to the purported conspiracy, on October 8, 2009, "Judge H. Allred sent [Thomas] a fake Court Appearance Notice," and on October 19, 2009, at a "fake hearing," Judge Allred used the "false name" Judge Riggs and placed Thomas in jail for three months and ten days.  Doc. 49 at 7.  Jack A. Wallace served as the prosecutor for this hearing.  *Id.* at 8.  During the "fake hearing," when Thomas made a "verbal motion. . .to postpone [the hearing] so that he could subpoena his witness," Judge Allred purportedly stated "he was not interested in any evidence." *Id*.  Thereafter, Judge Allred held another "fake hearing" on May 28, 2010 and again placed Thomas in jail, allegedly "so that [Thomas] could not file his brief in the [Eleventh] Circuit Court of Appeals."  *Id.* at 8.  During the hearing, Judge Allred allegedly "told [Thomas] that he would let him out of jail if he paid to Sandra Johnson what ever money that she would accept."  *Id.*  In turn, Sandra Johnson, a DHR worker, supposedly told Thomas's friend that she "would have the judge to let [Thomas] out of jail" if Thomas paid $1,000.00.  *Id.*  Although Thomas claims he paid DHR, Judge Allred still held Thomas in jail for another three weeks, again allegedly "for the purpose of preventing [Thomas] from filing his brief in the [Eleventh] Circuit Court of Appeals." *Id*. at 9.

While in jail, Defendant Leotis Williams purportedly visited Thomas, and

"[t]he first words out of his mouth were for $2,500.00, I'll file[] an affidavit of hardship on your behalf." *Id.* at 9. Williams also allegedly stated that "all the court wanted was money" and asked Thomas "to give him $500.00 and $500.00 for the court and he would have the judge release [Thomas] from jail." *Id.* at 10. Although Thomas agreed to this arrangement, Thomas never heard from Williams again, prompting Thomas to conclude that Williams "acted in concert with State Officials" because "Williams knew that Judge H. Allred used a fake name to defraud [Thomas] out of money." *Id.*

On January 20, 2012, Thomas filed this suit against Sandra Johnson, Leotis Williams, Jack A. Wallace, "the unknown prosecutor," and Judges Henry Allred, Elise Barclay, and Agnes Chappell. Doc. 1. Thomas subsequently amended his complaint twice. Docs. 43 and 49. The court dismissed Sandra Johnson due to Thomas's failure to serve her. Doc. 88. Further, Thomas's claims against the "unknown prosecutor" are also **DISMISSED** because "fictitious-party pleading is not permitted in federal court." *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). As such, the remaining defendants are Jack A. Wallace, Leotis Williams, and Judges Allred, Barclay, and Chappell.

### III.   ANALYSIS

The Second Amended Complaint has four claims: (1) Count I - alleged violation of the Fourth Amendment as related to the October 19, 2009 and May 28,

2010 imprisonments; (2) Count II - alleged denial of Equal Protection under the

Fourteenth Amendment by denying Thomas "an opportunity to present evidence on

his behalf because he is an African American;" (3) Count III - alleged Eighth

Amendment violation as related also to the two imprisonments; and (4) Count IV -

state law claims for false imprisonment, false arrest, and malicious prosecution.[4]

*See* doc. 49, at 11-13.  Although not explicitly stated, the court assumes that

Thomas asserts his three constitutional claims under 42 U.S.C. § 1983, which

provides a private right to relief for constitutional violations.  *See Gonzaga Univ. v.*

*Doe*, 536 U.S. 273, 284-85 (2002) (reiterating that § 1983 "generally supplies a

remedy for the vindication of rights secured by federal statutes" and the

Constitution).  Thomas seeks injunctive relief, a declaratory judgment, and

---

[4] While Thomas mentions 42 U.S.C. §§ 1985(3) and 1986 in the body of his original and amended complaints, *see* docs. 1 at 1-2; 49 at 1-2, he fails to state an actual cause of action pertaining to those sections in the portion of his complaint containing his claims.  Nevertheless, even if Thomas had properly pled a claim under §§ 1985(3) and 1986, he is still not entitled to relief under those sections.  "To state a claim for relief under § 1985(3), a plaintiff must establish that there was 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions.'"  *Smith v. Belle*, 321 F. App'x 838, 845 (11th Cir. 2009) (quoting *Griffin v. Breckenridge*, 402 U.S. 88, 102 (1971)).  Here, Thomas merely makes one legal conclusion that Judge Barclay exhibited some racial discrimination without offering any factual detail regarding such animus.  *See* doc. 49, at 6.  Therefore, the court cannot draw the reasonable inference that any defendant is liable under § 1985(3), *see Iqbal*, 556 U.S. at 678, and any purported claim Thomas maintains under this section is due to be **DISMISSED**.  Accordingly, Thomas's § 1986 claim—premised on knowledge of § 1985 violations—is also due to be **DISMISSED**.  Moreover, the claims also fail because the alleged conduct by Judge Barclay occurred prior to January 2008, well outside of the two year statute of limitation.  *See Trawinski v. United Technologies*, 313 F.3d 1295, 1298 (11th Cir. 2002).

compensatory and punitive damages.  Doc. 49 at 13-14.

### A.   Thomas's motion for leave to file a third amended complaint

Before beginning the substantive analysis of the claims, the court addresses first the motion for leave to file a Third Amended Complaint, which Thomas supports by citing Federal Rule of Civil Procedure 15(a) and the need to "eliminat[e] the shotgun pleading that defendants complain [] about in their motion[s] to dismiss."  Doc. 84 at 1.  Although the court agrees with Thomas that the Second Amended Complaint is a quintessential example of a shotgun pleading, *see Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n.9 (11th Cir. 1997), allowing Thomas to amend would amount to a futile exercise because an amendment would not cure the deficiencies in his claims outlined below.  Put differently, the underlying facts —even if pled properly—are not sufficient to evidence a right to relief.  *See Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262-63 (11th Cir. 2004) (holding that, "if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief . . . leave to amend should be freely given;" however, "a district court may properly deny leave to amend the complaint under Rule 15(a) when such amendment would be futile.") (quotation marks and citations omitted).  Therefore, the court **DENIES** the motion to amend.

### B.   Statute of Limitations

Several of Thomas's claims are barred by the applicable statute of limitations.

### i.      Section 1983 claims - Counts I, II, and III

The Eleventh Circuit directs reviewing courts to determine the timeliness of §

1983 actions arising in Alabama as follows:

> All constitutional claims brought under § 1983 are tort actions, subject
> to the statute of limitations governing personal injury actions in the
> state where the § 1983 action has been brought. *Wilson v. Garcia,* 471
> U.S. 261, 275–76 (1985). [Plaintiff's] claim was brought in Alabama,
> where the governing limitations period is two years. Ala.Code §
> 6–2–38; *Jones v. Preuit & Mauldin,* 876 F.2d 1480, 1483 (11th Cir.
> 1989) (*en banc* ). Therefore, in order to have [his] claim heard,
> [Plaintiff] was required to bring it within two years from the date the
> limitations period began to run.
>
> It has long been the law of this Circuit that in § 1983 actions "the
> statute of limitations does not begin to run until the facts which would
> support a cause of action are apparent or should be apparent to a person
> with a reasonably prudent regard for his rights." *Mullinax v.
> McElhenney,* 817 F.2d 711, 716 (11th Cir. 1987) (internal quotations
> omitted)."

*McNair v. Allen,* 515 F.3d 1168, 1173 (11th Cir. 2008).  According to Thomas, the

alleged wrongs began during his first paternity hearing in 1992 and continued

throughout various hearings until May 28, 2010.  Doc. 1 and 49.  Therefore, because

Thomas filed this lawsuit on January 20, 2012, *see* doc. 1, pursuant to the two-year

statute of limitations, all alleged incidents that occurred prior to January 20, 2010,

are time-barred, unless a basis exists to toll the statute.  However, "equitable tolling

is appropriate only in 'extraordinary circumstances,' and [plaintiff] bears the burden

of showing equitable tolling is warranted." *Salas v. Pierce,* 297 F. App'x 874, 877

(11th Cir. 2008) (citing *Drew v. Dep't of Corr.,* 297 F.3d 1278, 1286 (11th Cir. 2002)); *see also Justice v. United States,* 6 F.3d 1474, 1479 (11th Cir. 1993) (analysis tips in defendant's favor "when the plaintiff does not file her action in a timely fashion despite knowing or being in a position reasonably to know that the limitations period is running."). Moreover, "due diligence on the part of the plaintiff, though necessary, is not sufficient to prevail on the issue of equitable tolling." *Id.*

Thomas failed to allege any fact or justification for tolling the statute of limitations. The failure is not surprising because, based on the pleadings and supporting documents, there is no extraordinary circumstance that warrants equitable tolling. In fact, it is clear that Thomas knew the material facts underlying his claims beginning in 1992, but yet waited until this year to file this lawsuit. Consequently, the motions to dismiss the claims raised in Counts I, II, and III against (1) Judge Chappell, who performed her last alleged act at the original paternity hearing on April 9, 1992, *see* doc. 49 at 4-5, (2) Judge Barclay, who performed her last alleged act, at the latest, in 2009, *see* doc. 49 at 6-7, and (3) Jack Wallace, who performed his last alleged act on October 19, 2009, *see* doc. 49 at 7-8, are due to be **GRANTED**. *See* docs. 59, 62. The motion to dismiss the claims raised against Judge Allred that occurred prior to January 20, 2010 is due to be **GRANTED**, *see* doc. 59, leaving only the claims related to the May 28, 2010

hearing.[5]  *See* doc. 49 at 5-9.

### ii.      *State law claims - Count IV*

In Count IV, Thomas alleges state law claims for false imprisonment, false

arrest, and malicious prosecution against all defendants.  In Alabama, a plaintiff

must file all actions for malicious prosecution within two years,  Ala. Code § 6-2-38

(1975), and within six years for a false imprisonment claim, Ala. Code § 6-2-34(1).

Because false arrest is not specifically enumerated under Alabama law, the general

two year statute of limitations for torts applies.  Ala. Code § 6-2-38(l).  Thus, the

malicious prosecution and false arrest claims that arose prior to January 20, 2010

are time-barred and all false imprisonment claims that arose prior to January 20,

2006 are also time-barred.  Consequently, the motion to dismiss the state law claims

raised against Judge Chappell, who performed her last alleged act on April 9, 1992,

*see* doc. 49 at 4-5, is due to be **GRANTED**.  *See* doc. 59.  The motion to dismiss the

malicious prosecution and false arrest claims raised against Judge Barclay, who

performed her last alleged act, at the latest, in 2009, *see* doc. 49 at 6-7, is due to be

**GRANTED**.  *See* doc. 59.  The motion to dismiss the malicious prosecution and

false arrest claims raised against Jack Wallace, who performed his last alleged act

on October 19, 2009, *see* doc. 49 at 7-8, is due to be **GRANTED**.  *See* doc. 62.

---

[5]Likewise, the federal claims against Leotis Williams are not impacted by the statute of
limitations since they are also related to the May 28, 2010 hearing.

### C.    *Thomas's remaining claims fail as a matter of law*

The court turns now to the remaining claims – i.e. (1) Counts I, II, III, and IV against Judge Allred and Leotis Williams, and (2) the false imprisonment claim against Judge Barclay and Jack Wallace.  Plaintiff seeks monetary and injunctive relief against these defendants.  The court addresses the claims against each defendant separately.

### i.    *Judge Allred*

The remaining claims against Judge Allred are based on a hearing he conducted on May 28, 2010.[6]  *See* doc. 49, at 1, 11-14.  Thomas contends that Judge Allred held the hearing "so that [Thomas] could not file his brief in the [Eleventh] Circuit Court of Appeals" and that Judge Allred sent him to jail without probable cause, in violation of his Fourth, Eighth, and Fourteenth Amendment rights, and his state law rights against malicious prosecution, false arrest, and false imprisonment. *Id.* at 8, 11-13.  The claims against Judge Allred for monetary relief fail because Judge Allred has immunity.

### 1. Federal Claims

Thomas admits that Judge Allred acted in his official capacity as a judge throughout the alleged conspiracy.  *See* doc. 49, at 8-9.  Therefore, Thomas can only

---

[6]Because of the six year statute of limitation for false imprisonment claims, *see infra*, the state law claim against Judge Allred also includes the October 19, 2009 hearing he held regarding Thomas.

prevail on his federal claims if he can show that Judge Allred acted without jurisdiction.  It is well settled that judges are entitled to absolute judicial immunity for federal claims and are not subject to damages for acts taken in their judicial capacity unless they acted in "clear absence of all jurisdiction."[7]  *Bolin v. Story,* 225 F.3d 1234, 1239 (11th Cir. 2000) (citing *Stump v. Sparkman,* 435 U.S. 349, 356–57 (1978); *Simmons v. Conger,* 86 F.3d 1080, 1084–85 (11th Cir. 1996)).  Absolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation.  *Burns v. Reed,* 500 U.S. 478, 479 (1991).  Besides protecting the finality of judgments or discouraging inappropriate collateral attacks, judicial immunity also protects judicial independence by insulating judges from vexatious actions prosecuted by disgruntled litigants.  *Bradley v. Fisher,* 13 Wall. 335, 347, 20 L. Ed. 646 (1872).  "[T]he nature of the adjudicative function requires a judge frequently to disappoint some of the most intense and ungovernable desires that people can have."  *Forrester v. White*, 484 U.S. 219, 226 (1988).  And indeed, "[i]f judges were personally liable for erroneous decisions, the resulting avalanche of suits, most of them frivolous but vexatious, would provide powerful incentives for judges to avoid rendering decisions likely to provoke such suits.  The resulting timidity would be hard to detect or control, and it would manifestly detract

---

[7] However, judicial immunity does not protect judges from claims of injunctive relief in a section 1983 action.  *Bolin*, 225 F.3d at 1240 (citing *Pulliam v. Allen*, 466 U.S. 522 (1984)).  As such, claims for injunctive relief will be discussed, *infra*, in Section D.

from independent and impartial adjudication." *Id.* at 226-27 (citations omitted).

Perhaps more importantly, there are alternative avenues to challenge decisions made

by judicial officers, or put differently, "suits against judges [are not] the only

available means through which litigants can protect themselves from the

consequences of judicial error." *Id.* at 227.  Litigants facing unfavorable decisions

may seek relief "through ordinary mechanisms of review, which are largely free of

the harmful side-effects inevitably associated with exposing judges to personal

liability." *Id.*

 Accordingly, "[t]he Supreme Court has set forth a two-part test for

determining when a judge is entitled to immunity from money damages liability

when sued under section 1983": (1) whether the judge dealt with the plaintiff in a

judicial capacity, and (2) whether the judge acted in the clear absence of all

jurisdiction. *Simmons*, 86 F.3d at 1084-85 (citing *Stump v. Sparkman*, 435 U.S.

349, 362 (1978)).  The answer to the judicial capacity inquiry depends on whether:

"(1) the act complained of constituted a normal judicial function; (2) the events

occurred in the judge's chambers or in open court; (3) the controversy involved a

case pending before the judge; and (4) the confrontation arose immediately out of a

visit to the judge in his judicial capacity." *Sibley v. Lando*, 437 F.3d 1067, 1070

(11th Cir. 2005) (citing *Scott v. Hayes,* 719 F.2d 1562, 1565 (11th Cir. 1983)).

 Judge Allred met his burden of establishing that he is entitled to judicial

immunity.  As to the first prong, *i.e.* acting in his judicial capacity, again, Thomas alleges that Judge Allred sent him to jail during a May 28, 2010 hearing where Judge Allred performed his normal judicial functions.  Judge Allred satisfies this prong because he held the hearing in open court, the controversy involved a pending child support case, and the confrontation between Thomas and Judge Allred arose from Judge Allred's judicial capacity.  *See Sibley*, 437 F.3d at 1070.  With respect to the second prong, Thomas argues that Judge Allred "acted. . . in absence of all jurisdiction."  Doc. 71 at 4.  However, this statement is a naked assertion, unsupported by facts and insufficient to withstand a motion to dismiss.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Moreover, there is no indication that Judge Allred lacked jurisdiction over Thomas.  In fact, the complaint establishes jurisdiction existed because, as Thomas points out, he is a resident of Jefferson County, who was subject to an order to pay child support by the Jefferson County Family Court.  *See* doc. 49, at 1-5.  As a Family Court judge, Judge Allred has authority to enforce the court's orders.  Therefore, Judge Allred also satisfies the second prong of the immunity test and is entitled to absolute judicial immunity on the federal claims.  Accordingly, the motion to dismiss the federal claims for money damages against Judge Allred is due to be **GRANTED**.

     *2. State Law Claims*

     Under Alabama law, absolute judicial immunity also applies to a judge's acts

performed in his official judicial capacity. *City of Bayou La Batre v. Robinson*, 785

So. 2d 1128, 1132 (Ala. 2000). Again, as discussed, *supra*, Judge Allred acted in

his official judicial capacity during the May 28, 2010 hearing. *See* doc. 49 at 8.

Further, Thomas alleges that Judge Allred held another hearing on October 19, 2009

and "lock[ed] [Thomas] up in the county jail for three months and ten days." Doc.

49 at 7. As such, Judge Allred was also acting in his official capacity during the

October 19, 2009 hearing and is entitled to absolute judicial immunity. Thus, the

motion to dismiss the state law claims against Judge Allred is also due to be

**GRANTED**.

### ii.   *Judge Barclay*

Only the false imprisonment claim against Judge Barclay falls within the

statute of limitations. As it relates to Judge Barclay, Thomas alleges that sometime

prior to January 30, 2008, Judge Barclay, along with an unknown prosecutor,

"conspired, planned, and agreed to bring up a closed Child Support case against

[Thomas] and used the Family Court system to falsify documents that would make it

appear that [Thomas] owed Child Support," and that "Judge Elise Barclay set up

several fake hearings, but each time that she would see plaintiff's witness she would

cancel the hearing." Doc. 49 at 6. However, the prison sentences that form the

basis for the false imprisonment claim occurred on October 19, 2008 and May 28,

2010, and allegedly stemmed from orders issued by Judge Allred. Doc. 49 at 7-8.

Critically, Thomas makes no contention that Judge Barclay had any involvement in the decisions.  Therefore, the false imprisonment claim fails as a matter of law. Alternatively, even if Judge Barclay was involved, she is entitled to absolute judicial immunity, even if she acted maliciously or in error to resurrect the allegedly closed child support case, because she acted in her official judicial capacity.  *See City of Bayou La Batre*, 785 So. 2d 1128, 1133 (Ala. 2000) (citing *Almon v. Gibbs,* 545 So. 2d 18, 20 (Ala. 1989); *Stump v. Sparkman,* 435 U.S. at 362, and *Scott v. Dixon,* 720 F.2d 1542 (11th Cir. 1983)).  Accordingly, the motion to dismiss the state law claim of false imprisonment against Judge Barclay is due to be **GRANTED.**

### iii.    *Leotis Williams*

In support of the federal claims, Thomas contends that Leotis Williams, a private attorney, knew Judge Allred and acted in concert with him (and other defendants) to defraud Thomas of money.  *See* doc. 49 at 9-10.  Allegedly, "Williams knew Judge Allred used a false name," and was "in a position to put an end to [the] violation of [Thomas's] Constitutional and State Rights but he refused to do so."  *Id*.  This is the quintessential naked assertion that cannot survive a motion to dismiss.  *See Chadasama*, 123 F.3d at 1359 and *Iqbal*, 556 U.S. at 678. There is simply nothing in the complaint to show that Williams had any involvement in the May 28, 2010 hearing or the resulting imprisonment.  Moreover,

Thomas cannot raise any claims against Williams, a private attorney, under § 1983

action because "the conduct complained of must have been committed by a person

acting *under color of state law* and must result in a deprivation of rights, privileges,

or immunities secured by the Constitution or laws of the United States." *Bendiburg*,

909 F.2d at 468 (11th Cir. 1990) (emphasis added).  Where, as here, Thomas

presents no facts that Williams acted under color of state law, the motion to dismiss

the federal claims against Williams is due to be **GRANTED**.

Likewise, as to the state law claims, there is no evidence that Williams played

any role in Thomas's prosecution, arrest, or imprisonment.  In fact, Thomas alleges

only that Williams visited him *after* Judge Allred imprisoned Thomas.  Doc. 49 at 9.

In short, Thomas has alleged no facts to state a claim for relief against Williams.  As

such, the motion to dismiss the state law claims against Williams is also due to be

**GRANTED**.

    *iv.*    *Jack Wallace*

The only claim against Jack Wallace that falls within the statute of limitations

is the state law false imprisonment claim.  Regarding this claim, Thomas alleges that

Wallace "joined the conspiracy when he conspired with a lady at DHR to fabricate

the record to make it appear that [Thomas] owed money for Child Support," and that

Wallace "prosecuted [Thomas] before Judge H. Allred, knowing that he was using a

false name on October 19, 2009."  Doc. 49 at 7-8.  The United States and Alabama

Supreme Courts have held that prosecutors have absolute immunity for their prosecutorial actions in cases seeking money damages. *Imbler v. Pachtman,* 424 U.S. 409, 424 (1976); *Buckley v. Fitzsimmons,* 509 U.S. 259, 273 (1993); *Bogle v. Galanos*, 503 So. 2d 1217, 1219 (Ala. 1987). The prosecutorial function includes the initiation and pursuit of criminal prosecution, and all appearances before the court, including examining witnesses and presenting evidence. *See Imbler,* 424 U.S. at 424; *Burns v. Reed,* 500 U.S. 478, 492 (1991). Under these principles, even if a prosecutor  knowingly proffers perjured testimony and fabricated exhibits, the prosecutor is entitled to absolute immunity from liability. *Rowe v. Lauderdale,* 279 F.3d 1271, 1280 (11th Cir. 2002). Here, because Thomas acknowledges that Wallace acted in his official prosecutorial role when he "prosecuted" Thomas, Wallace is entitled to absolute prosecutorial immunity. Accordingly, the motion to dismiss Thomas's monetary relief claim for false imprisonment against Jack Wallace is due to be **GRANTED.**

## D.    *Injunctive and Declaratory Relief*

Thomas also seeks an injunction to "1. Not bring up a closed Child Support case against plaintiff and fabricate evidence to make it appear that the case is live. 2. Order defendants to refund to plaintiff all money that [has] been illegal[ly] taken under a pretense of Child Support.  3. Order defendants to refund to plaintiff all

costs for litigating against these false charges"[8] and to issue a declaratory judgment

stating that "DHR of Columbus, Georgia closed the Child Support Case 92-1660-5

against plaintiff in 1997 and that Defendants of Alabama reopen the case to defraud

plaintiff out of his money."  Doc.  49 at 13-14.  In other words, Thomas wants this

court to review and reverse a state court order.  The court declines to do so because

federal courts have limited jurisdiction.  *See Kokkonen v. Guardian Life Ins. Co. of

Am.*, 511 U.S. 375, 377 (1994).  Among the restrictions placed on federal courts is

the *Rooker-Feldman* doctrine, which prohibits federal district courts from exercising

jurisdiction over "cases brought by state court losers complaining of injuries caused

by state-court judgments rendered before the district court proceedings commenced

and inviting district court review and rejection of those judgments."  *McGee v. Kell*,

335 Fed. Appx. 3, 4 (11th Cir. 2009) (quoting *Exxon Mobil Corp. v. Saudi Basic

Indus. Corp*., 544 U.S. 280, 284 (2005)).  In short, under *Rooker-Feldman,* this

court does not have subject matter jurisdiction over Thomas's claims because

Thomas had his opportunity to contest the propriety of the Family Court's rulings

through the state appellate process.  Accordingly, the motions to dismiss Thomas's

claim for declaratory and injunctive relief are due to be **GRANTED**.

Moreover, even absent the *Rooker-Feldman* doctrine, no jurisdiction exists

---

[8]The second and third prayers for relief Thomas seeks go beyond injunctive relief and
asks the court for fees and damages.

because the complaint for injunctive and declaratory relief fails to allege a case or

controversy.  It is axiomatic that those who seek to invoke the jurisdiction of the

federal courts must satisfy the threshold requirement imposed by Article III of the

Constitution by alleging an actual case or controversy.  *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 101 (1983) (citations omitted).  The Supreme Court has held

that past wrongs do not in themselves amount to a real and immediate threat of

injury necessary to make out a case or controversy.  *Id.* at 103.  Plaintiffs must

demonstrate a "personal stake in the outcome" in order to "assure that concrete

adverseness which sharpens the presentation of issues" necessary for the proper

resolution of constitutional questions.  *Id.* at 124 (citation omitted).  Abstract injury

is not enough.  The plaintiff must show that he "has sustained or is immediately in

danger of sustaining some direct injury" as the result of the challenged official

conduct and the injury or threat of injury must be both "real and immediate," not

"conjectural" or "hypothetical." *Id*. at 102.

     Although, here, Thomas claims that he suffered from alleged unconstitutional

practices, "[p]ast exposure to illegal conduct does not in itself show a present case

or controversy regarding injunctive relief ... if unaccompanied by any continuing,

present adverse effects." *Id.* (citation omitted).  Past wrongs are evidence bearing

on "whether there is a real and immediate threat of repeated injury," but the prospect

of future injury rests on the likelihood that Thomas will again be charged with

violations related to his child support case and will again be subjected to a trial or hearing, or sentencing before the judicial defendants.  *Id*.  The court does not find a case or controversy in these remote circumstances.   In sum, Thomas has no valid claim for declaratory and injunctive relief.

## IV.  CONCLUSION

For the reasons stated herein, the motions to dismiss are due to be

**GRANTED**.

**DONE** this 26th day of October, 2012.

_____
ABDUL K. KALLON
UNITED STATES DISTRICT JUDGE